In United States District Court
Western District of Arkansas

Monte E. Johnson

Plaintiff

15-2042

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

MAR 09 2015

CHRIS R. JOHNSON, Clerk
By

Deputy Clerk

VS.

Valley Behavioral
Health System LLC,
a limited liability
Company, and any
and all commonly
associated and/or
Related entities

Defendant

## Petition

Comes Now the Plaintiff, Monte E.
Johnson, and for his claims against
Defendant, does state as follows:

1. That on a date shortly after March
   17, 2013, Plaintiff entered the
   medical facility owned and operated
   by Valley Behavioral Health System,
   LLC., located in Barling, Arkansas.

2. That upon entering said facility,
   Plaintiff inquired at the front
   desk whether he might be able to
   consult with a psychiatrist on
   the premises. Shortly thereafter,
   Plaintiff was escorted to a room
   wherein he met with numerous
   personnel and filled out several
   forms. That Plaintiff spent
   several hours waiting to see the

psychiatrist on staff but
throughout most of the day, remained
in the same area being asked numerous
questions by people, none of whom
were identified to be either a
psychiatrist, a psychologist or
any other mental health counseling
professional.

3. That Plaintiff intermittently,
throughout his time in this back
area, inquired when he might be
able to see a psychiatrist. That
personnel employed by Defendant
seemed to indicate that one was
available but that he/she could
not be seen at this time. No one

EVER suggested to Plaintiff that
he come back another day. Plaintiff,
throughout the day, believed that
he was going to be able to see a
psychiatrist at some time during
that day.

4. That near the end of the day,
possibly late afternoon, Plaintiff
was finally escorted by an
employee, or employees, to an area
different from where he had spent
much of the day. Plaintiff believed,
based upon information given to
him by the employees, that he was
being escorted to go see and
consult with a psychiatrist.

5. That almost immediately upon going through a particular doorway, which closed behind him, ~~and~~ MR. Johnson found himself in a large open room where several other people were standing. MR. Johnson felt something was wrong and believed he may not be in the area where he was going to see any psychiatrist at all.

6. MR. Johnson shortly after entering said large room, went to what appeared similar to a nurse's station. He inquired about seeing a psychiatrist. He was ~~never~~ NOT given a straightforward answer, but

instead various personnel made
Numerous statements that seemed to
avoid the main question. After
several inquiries which ~~did not~~ WERE NOT
answered directly, MR. Johnson
was finally told both that he could
Not see the psychiatrist today,
because NONE was on the premises,
and, that he would have to wait until
tomorrow to see any psychiatrist.
7. That Plaintiff became fully aware
that he was in a locked mental facility
and, he was not being allowed to leave
despite his insistent demands. That
he was reduced to finally have NO means
of protest, due to the actions of

so-called "medical personnel", ~~that~~ so he resisted in the only way he believed might be effective. Mr. Johnson chose to stand against his medical jail keepers by standing alone in the area where he had been intentionally led and, subsequently, intentionally imprisoned. Mr. Johnson stood in a single place while medical, so-called, personnel intentionally harassed, hounded, attempted to provoke and generally made themselves seem to Plaintiff like angry hyenas taunting its prey. Mr. Johnson stood his ground without movement, except for his eyes and occasional

movement of muscles to relieve the
pain of standing alone, in protest
of his imprisonment, for more than
six(6), very longs very physically
taxing, very emotionally demanding,
HOURS. All to no avail. The
harassment and attempts to have
Mr. Johnson to sit upon a chair
behind him, ~~which~~ The chair had been placed(?)
there and then removed(?) or had
never been placed there at all,
even though the hyenas continued
to cajole the prisoner into sitting
down. When Mr. Johnson finally and
wholly realized the ~~futit~~ futility
of his effort to extricate himself

from his unlawful imprisonment,
Mr. Johnson bolted toward the
nearest exit door which led to the
outside, as he could see through the
glass in the door, but it was bolted
shut. Mr. Johnson returned to his
previous post where he was amused
to see no alleged chair had been
behind him.

8. Mr. Johnson eventually negotiated
a truce under the pressure of his
relentless and continuing imprison-
ment. He agreed with personnel
that he would leave the common area
and go to his private appointed
room if they would promise, and

KEEP their promise, to leave the
door open to his room.
9. That Mr. Johnson retired to his
appointed room where he rested
on the bed but remained alert for
the remainder of his time in said
appointed room.
10. That sometime after 9:00 am.,
the apparent prison warden,
who claimed to be a psychiatrist,
came into his room accompanied
by his close cousin, whom he loves
very much. At the encouragement
of his cousin, he relented in
signing documents which were
placed before him, as he was advised

he
I would not be permitted to leave
this confinement without executing
at least one of the said documents.
Before leaving the area of confine-
ment, Mr Johnson appointed his
beloved cousin to request of so-
called medical personnel a copy of
their videotape which recorded the
length of Mr. Johnson's imprisonment.
personnel confirmed the requested
videotape existed but declined to
provide a copy, nor make any offer,
to
~~for~~ provide ~~a~~ ANY copy at any future
date.

11. Mr Johnson left the medical
prison that afternoon and

returned to his home.

Wherefore, Plaintiff demands
of the Defendant, limited liability
company, together with every related
company, together with any person
who profits from the industry of
employees of the Defendant company:
1. That said parties mentioned
above fully compensate Plaintiff
for the ridiculous hounding of him,
for his imprisonment, for his physical
pain, for his emotional pain and for
the complete confiscation of his
corpus without any due regard
for his person.

2. That said parties mentioned
   above be punished suffiently
   by paying punitive damages in
   an amount which Not deter
   them, which they likely are unlikely
   to be deterred from such abhorrent,
   Ridiculous behavior, but will
   effectively prevent them from
   raining their version of hell down
   on any other human being, by
   both blacklisting everyperson in
   a profit taking, and/or supervising
   position, ever again from having
   authority in any medical facility,
   including the above refenced supervisors
   who trained said personnel, which

receives government funds from any governmental entity, including, but not only limited to, the U.S. government and the State of Arkansas, which both currently are major fund sources for this facility;

3. That no person who participated in the harassment, including supervisons, ever agin again be allowed to work in a medical facility until they have been purged of all vestiges of their prior training and learned the difference between a potential patient and a potential customer.

4. That the incorporation and all licensures of said Defendant and all related business entities be permanently revoked, Not suspended.

5. That U.S. Marshals be ordered to take immediate possession of all videotape currently in existence, whenever it may be found of Mr. Johnson's entire time spent anywhere on the above mentioned premises. Post haste.

6. That Plaintiff obtain his costs and expenses.

Jury Trial
Demanded

Phone: 918-774-2223

Monte E. Johnson
Monte E. Johnson
971 Merced Ave #6
South Lake Tahoe, CA
96150