IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MONTE E. JOHNSON                                                                              PLAINTIFF

VS.                              Case No. 2:15-cv-02042-PKH

VALLEY BEHAVIORAL HEALTH
SYSTEM, LLC, and any commonly
associated and/or related entities                                                         DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Monte E. Johnson, filed this action on March 9, 2015. (Doc. 1) He proceeds *pro se* and *in forma pauperis*. The case is before the Court for a determination of whether service of process should issue.

**I. Background**

Plaintiff's Complaint alleges that on or about March 17, 2013, he entered the medical facility owned and operated by Defendant located in Barling, Arkansas. (Doc.1, ¶ 1) Plaintiff alleges that he inquired at the front desk if he might be able to consult with a psychiatrist; that shortly thereafter he was escorted to a room where he met with numerous personnel and filled out forms; and, that he spent several hours waiting to see the psychiatrist on staff but he never did. (Doc.1, ¶ 2) Plaintiff avers that intermittently throughout the day he inquired when he might be able to see a psychiatrist; that Defendant's personnel seemed to indicate that one was available but could not be seen at that time; that no one ever suggested to him that he should come back on another day; and, that throughout the day he believed that he was going to be able to see a psychiatrist. (Doc.1, ¶ 3)

Plaintiff states that near the end of the day he was escorted to a different area, and he believed he was being escorted to go see and consult with a psychiatrist. (Doc.1, ¶ 4) Upon going through a doorway, which closed behind him, Plaintiff felt something was wrong and he believed he may not be in the area where he was going to see a psychiatrist at all. (Doc.1, ¶ 5)

Plaintiff alleges that he went to what appeared to be a nurses' station, and he again inquired about seeing a psychiatrist. He says that he was not given a straight answer, but was finally told that he could not see a psychiatrist that day, and that he would have to wait until the next day to see a psychiatrist. (Doc.1, ¶ 6) Plaintiff says that he became fully aware that he was in a locked mental facility and, despite his insistent demands, he was not allowed to leave. (Doc.1, ¶ 7) He states that he protested in the only way he felt would be effective, by standing alone, while personnel "intentionally harassed, hounded, attempted to provoke and generally made themselves seem to Plaintiff like angry hyenas taunting its prey." (Doc.1, ¶ 7) Plaintiff goes on to state that he stood alone in protest for "six (6), very long, very physically taxing, very emotionally demanding, HOURS;" that attempts were made to "cajole the prisoner into sitting down;" and, that when he realized the "futility of his effort to extricate himself from his unlawful imprisonment," he bolted toward the nearest exit only to find that it was bolted shut. (Doc.1, ¶ 7)

Plaintiff next alleges that he "eventually negotiated a truce" and agreed that he would go to his "private appointed room" if personnel promised to leave its door open. (Doc.1, ¶ 8) Plaintiff rested on the bed "but remained alert," (Doc.1, ¶ 9) and then sometime around 9:00 a.m. "the apparent prison warden, who claimed to be a psychiatrist" came into his room along with Plaintiff's cousin. At the encouragement of his cousin, Plaintiff "relented in signing documents" placed before him, as he was advised that he not be permitted to leave his confinement without executing at least

one of the documents. (Doc.1, ¶ 10) Plaintiff then left the "medical prison" that afternoon and returned to his home. (Doc.1, ¶ 11)

For relief, Plaintiff demands that Defendant, "together with every related company, together with any person who profits from the industry of employees of the Defendant company," fully compensate Plaintiff "for the ridiculous hounding of him, for his imprisonment, for his physical pain, for his emotional pain and for the complete confiscation of his corpus without any due regard for his person." (Doc.1, p. 12) Plaintiff further demands punitive damages, the "blacklisting every person in a profit taking and/or supervising position, ever again from having authority in any medical facility," and that no person who participated in the harassment ever again be allowed to work in a medical facility "until they have been purged of all vestiges of their prior training and learned the difference between a potential patient and a potential customer." (Doc.1, pp. 13-14) Plaintiff also demands that "the incorporation and all licensures (sic) of said defendant and all related business entities be permanently revoked, not suspended." (Doc.1, p. 15)

Plaintiff alleges that he suffered greatly as a result of Defendant's actions, but neither his Complaint nor his supplemental Response enumerate any specific damages.

Plaintiff's Complaint sets forth no basis for this Court's jurisdiction.

Because the Complaint did not allege any basis for federal court jurisdiction, an Order was entered on March 24, 2015 (Doc. 5), directing Plaintiff to file a supplement to his Complaint listing all members of the LLC and their addresses for service. The supplement was to be filed no later than April 6, 2015. On April 2, 2015, Plaintiff filed a Response. (Doc. 6) In Plaintiff's Response, Plaintiff maintains that "for purposes of determining citizenship for an unincorporated association, which is exactly what Valley Behavioral is, the citizenship SHALL be determined by looking to the principal

place of business and the State under whose laws said association is organized." (Doc. 6, pp. 3-4) He goes on to argue that no where in the diversity statute, 28 U.S.C. § 1332, is there any other guidance or definition of how to determine correct citizenship of an unincorporated association, and "any other interpretation of diversity jurisdiction, pursuant to an unidentifiable means of intent, would be expressly unconstitutional as having defied the principle of the founding fathers, separation of powers, by usurping the power of the United States Congress to identify and determine its true intent." (Doc. 6, pp. 4-5) Plaintiff urges the Magistrate Judge to reverse his ruling of March 24, 2015, and allow this case to proceed; and, failing that, to "go ahead and serve Michael Morton directly at his primary headquarters, on the corner of 4th Street and Rogers Ave., Fort Smith, AR . . ." (Doc. 6, pp. 5-6) Plaintiff alleges that he has no reason to believe that Michael Morton, whom he asserts to be the "sole owner of any and all fictitious entities" has any citizenship in the State of California, and that Plaintiff may not have any means of establishing Mr. Morton's citizenship. (Doc. 6, pp. 6-7) Plaintiff alleges that he is a citizen and/or resident of the State of California. (Doc. 6, p. 10)

## II. Discussion

Federal Courts are courts of limited jurisdiction. *See e.g., Godfrey v. Pulitzer Publishing Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998). Generally, the federal district courts may only exercise jurisdiction over cases in which diversity of citizenship exists and the requisite amount in controversy is involved and those cases in which a federal question is presented; that is, those cases involving violations of federal constitutional or statutory law. *See e.g., Southwestern Bell Telephone Co. v. Connect Communications Corp.*, 225 F.3d 942, 945 (8th Cir. 2000). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a*

*Better Env't.,* 523 U.S. 83, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998)(quoting *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S. Ct. 510, 28 L. Ed.462 (1884)) (alteration in original)).

Plaintiff's Complaint alleges no violation of federal constitutional or statutory law. It sets forth, as well as can be determined, tort claims for false imprisonment and the tort of outrage, both of which are claims based on Arkansas law. *See .e.g., Pounders v. Trinity Court Nursing Home, Inc.*, 265 Ark. 1, 576 S.W.2d 934 (1979)(false imprisonment); *The Limited Stores, Inc. v. Wilson-Robinson*, 317 Ark. 80, 876 S.W.2d 248 (1994)(false imprisonment); and, *M. B. M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980)(tort of outrage). Plaintiff alleges no cause of action for a civil rights violation pursuant to 42 U.S.C. § 1983; and, even if the Court were to liberally construe his Complaint to include such a claim, it would clearly be subject to dismissal as a matter of law as there is no allegation that Defendant's action was taken "under color of state law." *See Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990); *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed2d 477 (1974); *Johnson v. The Bridge*, 2014 WL 2711795 (E.D.MO. 2014).

Plaintiff maintains diversity of citizenship exists because he is a citizen of California and Valley Behavioral Health System, LLC is an entity organized under Arkansas law and having its principal place of business in Barling, Sebastian County, Arkansas. Diversity of citizenship under 28 U.S.C. § 1332 exists if there is complete diversity of citizenship and the amount in controversy is more than $75,000. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170, 1172 (8th Cir. 2008). "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its members." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Plaintiff must allege the citizenship of each member of Valley Behavioral Health, LLC, at the time the

complaint was filed. *Id.* Plaintiff has not complied with the Court's Order (Doc. 5) giving him until April 6, 2015, to file a supplement listing all members of the LLC and their addresses for service. Without knowing the citizenship of each of the members of Valley Behavioral Health System, LLC, the Court has no way of determining whether diversity of citizenship exists. No other basis for federal court jurisdiction exists in this case.

### III. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Complaint be dismissed prior to service of process based on Plaintiff's failure to comply with the Order of the Court. Fed. R. Civ. P. 41(b). Further, the Complaint should be dismissed as no basis for federal court jurisdiction is stated in the Complaint. 28 U.S.C. § 1915(e)(2)(b)(requirement that the Court screen *in forma pauperis* complaints to determine if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a Defendant who is immune from suit).

**The Plaintiff has fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 27th day of April, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE